ACME COAL CO. v. UNITED STATES.
No. H–299.

Court of Claims.
Nov. 3, 1930.

Smith & Moore, of Washington, D. C., for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, GREEN, and WHALEY, Judges.

WHALEY, Judge.

The plaintiff, a coal-mining company, on August 30, 1919, gave an option to Robert H. Walsh to purchase its entire property; Walsh assigned this option to F. S. Peabody, and thereafter, on December 31, 1919, pursuant to the exercise of said option by Peabody, it entered into an agreement to sell its entire property to him, or his assignees, for the sum of $1,000,000, and a certain additional sum based upon the inventory of supplies on hand of the company, and "* * * in addition to the million-dollar purchase price above referred to shall pay to the coal company an additional sum of money equal to the amount of any tax which shall be assessed against it by the United States under any income or excess profit tax law as the result of such sale at said price when any such tax shall have been duly assessed and become due and payable from the said coal company to the United States." Bonds were executed by a surety company and Peabody also, guaranteeing the payment of this additional amount. Peabody transferred his contract to the Sheridan Coal Company, and it became the purchaser.

An extension of time having been granted by the Bureau of Internal Revenue, the plaintiff duly made its income and profits tax return for the year 1920 on May 20, 1921. In this return it reported its operating net income at $46,297.65 and the net profit realized on the sale of its assets of $82,988.37, making a total net income of $129,286.02. The total tax shown by the return was $12,617.80, which amount was paid by plaintiff at the time of making the return. In arriving at this total tax, no sum was included to cover the income and profit taxes due the government and to be paid by the purchaser. The books of the plaintiff were kept on an accrual basis, but it did not enter on its books of account any sum representing the contract for reimbursement for taxes until the year 1924, when the sum of $44,639.35, collected as a result of said contract, was entered upon its cash-book and from there credited to its surplus as a reduction of income tax previously charged to surplus. On March 10, 1923, the Commissioner of Internal Revenue determined an additional tax liability on the part of plaintiff for the year 1920 of $70,032.54, and thereafter, on March 31, 1924, the Commissioner again redetermined said tax liability and levied a further assessment of $18,299.91. These amounts were paid by the plaintiff on September 9, 1924. In determining these amounts, the Commissioner computed as income for the year 1920 the amount of $66,896.03 to be the sum due, under the agreement, to discharge all taxes to the government. Having paid its additional taxes, plaintiff filed a claim for refund in the sum of $20,511.77, being the amount of tax arising from the inclusion in its net income for the year 1920 of the sum of $66,896.03. Thereafter the Bureau, having been advised that only $44,639.35 had been received from the purchaser, after arbitration of the matter, decided to tax that sum as income instead of the sum of $66,896.03, and accordingly it so computed the tax and granted the claim for refund to the extent of $6,864.86. It denied the claim for refund in the sum of $13,646.91.

To recover that sum, this suit is instituted. The government has filed a counterclaim to recover the sum of $6,864.86 refunded to plaintiff, which represents the tax on the difference between $66,896.03, the tax on net profit as calculated by the Bureau, and the $44,639.35, actual payment made to plaintiff in compliance with the agreement of the Sheridan Coal Company to pay plaintiff a sum equal to the tax paid to the government.

■ The first question to be decided is: Was any of the tax on the net profit due and payable in the year 1920? The books of plaintiff were kept on an accrual basis. All the events occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay it in advance of the assessment of the tax. The liability of the plaintiff accrued in 1920. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Rouss v. Bowers (C. C. A.) 30 F.(2d) 628; American National Co., Rec., v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946.

The next question to be decided is: Was the amount to be paid seller by the purchaser in liquidation of the taxes assessed against

the seller part of the consideration of the purchase price and to be treated as income? Since this suit was commenced the Supreme Court has handed down the decision in the case of Old Colony Trust Company v. Commissioner of Internal Revenue, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918. In this case, supra, the Supreme Court held that the payment by the employer of the income taxes assessable against the employee constituted additional taxable income to such employee. See, also, United States v. Boston & Maine R. R. Co., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929.

■ The agreement to pay, and the actual payment by the purchaser of the income taxes assessable against the seller, constitute additional taxable income to such seller. It is a profit derived from the sale, and taxable like any other gain or profit. The total amount paid is the actual purchase price, and the adding of the tax was only a method of arriving at the amount to secure the property and formed part of the consideration. Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251.

■ The plaintiff did not include in its income tax return for 1920 any amount to cover the federal taxes for that year which the purchaser had agreed to pay. The government in adjusting the taxes of plaintiff found the sum of $66,896.03, and included that amount in the taxable income assessed against the plaintiff, and levied an additional tax, which the plaintiff paid. Since the books of the plaintiff were kept on an accrual basis, it might be said this amount accrued to plaintiff. Subsequently, however, after arbitration, the plaintiff only received from the purchaser the sum of $44,639.35 as the amount of the obligation of the purchaser to discharge the income tax liability of the seller. Although it might be argued the amount accrued at the time of sale is the correct amount on which the tax should be levied, nevertheless the plaintiff, as a matter of fact, did not receive this amount, but, instead, only $44,639.35. Accruals of this nature for the purpose of determining income for tax purposes are subject to adjustment in order to reflect actual income. Producers Fuel Co., 1 B. T. A. 202; Josiah Wedgwood & Sons, Ltd., 3 B. T. A. 355; Bonnie Bros., Inc., 15 B. T. A. 1231; Inland Products Co., 10 B. T. A. 235, affirmed (C. C. A.) 31 F. (2d) 867; Philip C. Brown et al., 10 B. T. A. 1122; Lehigh Valley Coal Sales Co., 15 B. T. A. 1401.

■ We now have before us the matter of the tax liability of plaintiff for the year in which the transaction occurred after all the facts are known and the amounts have been definitely determined.

The plaintiff's income with respect to this item should be determined upon the basis of what actually happened, and therefore upon the basis of what it actually received. The Commissioner of Internal Revenue was correct when he adjusted the tax to reflect the actual amount received by the plaintiff from the purchaser as the tax liability under the agreement of the purchaser to pay the tax.

The complaint and counterclaim should be dismissed, and it is so ordered.