*536
 
 Littleton, Judge,
 

 delivered the opinion of the court:
 

 The question in this case is whether plaintiffs are entitled to recover a tax assessed and collected for 1918 on an item of $713,558.10 received in that year, from a sale which was consummated in 1917. Extended evidence, both oral and documentary, was submitted making the matter seem somewhat complicated, but, when reduced to the basic facts, the question is simply whether the item accrued in 1917 or 1918.
 

 April 5, 1917, the Schoellkopf Company entered into an agreement with certain parties to sell its assets, effective at the opening of business January 2, 1917, to a corporation thereafter to be organized. The agreement contemplated not only the sale to the same corporation of the assets of the Schoellkopf Company, but also those of four other corporations. The proposed corporation, the National Company, was organized May 26, 1917, and on May 28, 1917, became the necessary party to the agreement of April 5, 1917. June 6, 1917, the Schoellkopf Company executed an agreement of transfer of all its properties and business to
 
 *537
 
 the National Company and July 20, 1917, executed and delivered deeds covering the real property which were duly recorded. Thereafter the National Company operated the properties.
 

 The price to be paid to the Schoellkopf Company was the “ value of such [its] business and properties at the opening of business on January 2, 1917,” and the agreement set out in detail how such value should be determined. Among other things, the agreement provided for an appraisal committee whose duty it was to identify and determine the properties to be transferred as well as their value on the basic date. Such committee was also to determine excess net profits in the operation of the business for 1917 on account of which cash payments were to be made quarterly to the Schoellkopf Company.
 

 Apparently the appraisal committee did not finish its work until about December 31, 1917, but prior to that time cash in the amount of approximately $6,000,000 had been paid to the Schoellkopf Company and a substantial amount of the preferred and common stock, representing the remainder of the consideration, had been issued to it. While some preferred and common stock was issued in 1918, there has been no inclusion in income for 1918 on account of such consideration, nor is there any suggestion on the part of defendant that it should be so included. The record does not definitely show what part of the consideration was represented by the common and preferred stock; however, the record shows that it was very substantial, having been tentatively determined at one time by the Commissioner at approximately $15,000,000 and shown on the return for 1917 at approximately $10,000,000. We are not advised of the exact amount of cash paid in 1917, but the facts show that it was at least $6,000,000. The exact amount of consideration paid in 1917 is not material, since we are not here seeking to determine the gain or loss on the 1917 sale, but we do consider important the fact that the greater part of the consideration passed to the Schoellkopf Company in 1917, and the further fact that the assets were transferred in 1917 and the National Company thereafter operated the properties.
 

 
 *538
 
 In addition to the consideration referred to' above, there was paid to the Schoellkopf Company, or rather to its liquidating trustees who acted for it after dissolution, $713,-558.10 on May 24, 1918, as part of the consideration of the sale referred to above, and the question is, Was this item taxable income for 1918? The return for 1917 was filed prior to the receipt of the foregoing amount, although it had been fixed, and such amount was not included in the consideration used in determining gain or loss for 1917 from the sale. The return, however, claimed a loss on the transaction of $4,682,422.45, which was determined by assigning a March 1, 1913, value, plus certain additions and less depreciation, to the assets sold of $21,489,632.82 and deducting therefrom consideration received in the amount of $16,807,210.40, which was made up principally of preferred stock at a value of $9,667,350, common stock at $684,940, and cash of $5,971,552.90. Prior to the disallowance by the Commissioner of the foregoing loss as a deduction, the return for 1918 had been filed, which, upon advice of counsel, included the controverted item of $713,558.10 as income, on the theory that since a loss had been claimed on the sale for 1917, any other payments should be reported as income. This, however, was erroneous, and if the item of $713,558.10 had been included in the consideration shown in the return there would still have been a claimed loss. Subsequently the Commissioner determined that there was neither a determinable gain nor loss on the transaction in 1917, thus denying the claimed loss. Thereafter, in 1923, an agent of the Commissioner made an examination and audit of the 1918 return and recommended the exclusion of the item of $713,558.10 from 1918 income for the reason that it was accrued income for 1917, but the Commissioner did not approve this recommendation and this suit followed in due course.
 

 The defendant suggests that the liquidating trustees who filed the 1917 and 1918 returns on behalf of the Schoellkopf Company were on the cash basis, though admitting that the books of the corporation were kept on the accrual basis. We cannot sustain this contention, and have found as a fact to the contrary. We are satisfied from the record that in
 
 *539
 
 come for both 1917 and 1918 should be reported on the accrual basis. It may well be that the liquidating trustees kept only memorandum accounts, but they were only acting in the final liquidation of the Schoellkopf Company, and for such purposes the Schoellkopf Company remained in existence under section 221 of the General Corporation Law of the State of New York. We are convinced that pending final dissolution the same method of accounting for income to such company was followed subsequent to July 23, 1917, as was used prior to that time, namely, the accrual basis.
 

 Under all revenue acts which have been enacted since the adoption of the sixteenth amendment, a return of income has been required on an annual basis, showing the result of transactions occurring during a fixed accounting period, either calendar year or fiscal year, at the option of the taxpayer. Under the statutes and regulations in force for 1917 and 1918, a taxpayer could report his income on the accrual basis.
 
 Burnet
 
 v.
 
 Sanford & Brooks Co.,
 
 282 U.S. 359. The Schoellkopf Company was on a calendar-year basis and reported its income under the accrual method of accounting. The only question in this case, therefore, is whether the controverted item in question accrued in 1917. In other words, was the 1917 sale a transaction from which gain or loss could be said to have accrued in 1917? We have no doubt that it was. An item accrues when all events have occurred necessary to fix the liabilities of the parties concerned therewith and to determine the amount of such liabilities.
 
 United States
 
 v.
 
 Anderson et al.,
 
 269 U.S. 422;
 
 American National Co. v. United States,
 
 274 U.S. 99;
 
 Lucas
 
 v.
 
 North Texas Lumber Co.,
 
 281 U.S. 11, and
 
 Lucas
 
 v.
 
 American Code Co.,
 
 280 U.S. 445. There must not only be admitted liability arising on account of the transaction, but also the events necessary to fix the amount of the liability must have occurred. An examination of the 1917 sale in the light of the foregoing principle leads us to the conclusion that whatever gain or loss accrued on account of such sale accrued in 1917. It is clear that the liability under the contract of April 5,1917, which was accepted by the National Company May 28, 1917, arose at that time. By such agreement the
 
 *540
 
 Schoellkopf Company became obligated to transfer its assets to the National Company and this was carried out in 1917. By the same agreement the National Company became obligated to pay certain consideration to the Schoell-bopf Company, namely, stock and cash, and the greater part of such consideration passed in accordance with the agreement in 1917. The assets to be transferred were in existence in 1917 and the contract set out in detail the consideration to be paid, namely, the value at January 2, 1917, and the manner in which such valuation should be determined. No question is raised as to the existence in' 1917 of the factors necessary to a determination of the price to be paid for the tangible assets, but the defendant insists that the factors necessary to determine the amount to be paid on account of excess net profits for 1917 were not only not determinable in 1917, but also were not determined until 1918. The controverted item of $713,558.10 consisted of a payment on account of excess net profits. Much of the defendant’s argument on this point is based upon the changes which were made in the contract on account of this item. It will be noted, however, that the original contract specifically provided that which should be paid on account of excess profits; there can, therefore, be no question that there was a liability to make payment on that account and that the contract provided how such amounts should be determined. It is true that a dispute arose as to how the amount of such profits would be computed, but we do not think that changes the situation. The controversy was whether. Federal income and profits tax for 1917 should be deducted from gross profits in determining excess net profits. The original contract provided that the excess net profits should be determined by deducting “ from gross profits * * * all expenses and charges of every character relating thereto.” The dispute was finally settled by agreeing, apparently by a compromise, that only a part of such taxes should be deducted. But all the events necessary to a determination of income and tax thereon occurred in 1917, and certainly the contract is not so indefinite or so uncertain that it would not have been possible to
 
 *541
 
 have determined at the end of 1917 the amount of liability under the contract. We are of opinion that the case comes within the rule laid down in
 
 Uncasville Mfg. Co.
 
 v.
 
 Commissioner of Internal
 
 Revenue, 55 Fed. (2d) 893, 895, where, in dealing with a somewhat similar situation, the court said: “ We think that the case falls within
 
 U.S.
 
 v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, not
 
 Lucas
 
 v.
 
 American, Code
 
 Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538. All the facts upon which the calculation depended had been fixed before the expiration of the year 1918. Differences could arise, and did, as to the amount of the company’s income for that year, but they were due to the proper appraisal of its property, and possible disputes as to the meaning of the law. The computation was uncertain, but its basis was unchangeable; it was unknown, not unknowable on December 31, 1918.” See, also,
 
 Acme Coal Co.
 
 v.
 
 United States,
 
 70 C.Cls. 696, 44 Fed. (2d) 95. As the court stated in
 
 Lucas
 
 v.
 
 American Code Go., sufra,
 
 “ since the company kept its books on the accrual basis, the mere fact that the exact amount of the liability had not been definitely fixed in 1919 would not prevent the deduction, as a loss in that year, of the amount later paid.”
 

 The payment in question of $713,558.10 was admittedly a part of the consideration received on account of the 1917 sale and, as indicated above, we are of opinion that it accrued in 1917. It was therefore an item to be considered in arriving at gain or loss in 1917 on account of the 1917 sale. It therefore follows that it was improper to include such amount as income for 1918, and the Commissioner of Internal Revenue erred in rejecting the claim for refund.
 

 Judgment will be entered in favor of plaintiffs for $85,232.17, with interest as provided by law. It is so ordered.
 

 Williams,
 
 Judge;
 
 and GreeN,
 
 Judge,
 
 concur.
 

 Whaley,
 
 Judge,
 
 dissents.
 

 Booth,
 
 Ghief Justice,
 
 took no part in the decision of this case on account of illness.