BEARDSLEY RUML, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49737.   Promulgated November 7, 1934.

*G. S. Herr*, Esq., for the petitioner.
*John E. Marshall*, Esq., for the respondent.

OPINION.

MORRIS: The respondent having determined a deficiency in income tax of $1,606.64 for the calendar year 1928, the petitioner brings this proceeding for the redetermination thereof, alleging error by reason of the disallowance of a claimed loss of $6,687.80 sustained upon the sale of certain securities.

The respondent concedes that a loss was actually sustained and that the amount claimed is correct, but contends that it is allowable in 1929, when the sale of said securities was consummated by delivery. The simple issue, therefore, is the year in which the loss should be allowed.

The petitioner, an individual, resident of Bronxville, New York, purchased through his brokers certain shares of capital stock of the North Central Texas Oil Co. in or about April 1928, and at or about which time the stock was transferred to his name and delivered to the Guaranty Trust Co., where it was posted as collateral security for a loan.

In the fall of 1928, the petitioner decided to sell the stock and he not only informed his brokers of his intention to do so, but instructed them to sell the stock for his account. He explained to his brokers that the stock was pledged as collateral and that he desired to have his credit standing at the bank maintained. Whereupon his broker stated that the matter could be taken care of and that he, the petitioner, could substitute other collateral at the bank and deliver the stock for sale at his convenience. What the broker actually did, as the petitioner learned after receiving a statement of his account in January 1929, though he gave no instructions that the transaction should be so handled, was to sell the shares " short " of the market. When the petitioner learned how the transaction had been handled he took the matter up with his broker and was told " That is simply the way we carry it until you deliver it."

The petitioner delivered 1,500 shares of the stock aforesaid to his broker in 1928 and upon such shares a loss was claimed by him in that year and admittedly allowed by the respondent. It was not until early in 1929, however, when the loan at the bank had been paid, that the remaining 2,500 shares were actually delivered. The respondent disallowed a claimed deduction in 1928 upon the 2,500 shares on the ground that the transaction was not completed with respect thereto until actual delivery in February 1929.

" In general, the statute is concerned only with realized losses, *Weiss* v. *Wiener*, 279 U. S. 333; though ' exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized,' *Lucas* v. *American*

*Code Co.*, 280 U. S. 445. They must be fixed identifiable events, *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398; and, as a rule, evidenced by closed and completed transactions, art. 141, Reg. 65 and 69; and *Ewing Thomas Converter Co.* v. *McCaughn*, 43 Fed. (2) 503; certiorari denied, 282 U. S. 897." *John C. Shaffer*, 28 B. T. A. 1294.

The petitioner's counsel would have us completely ignore the fact that a "short" sale was effected in 1928 of the 2,500 shares of stock in question. This he dismisses with the explanation that "There is no magic in the word 'short'", which, he says, was used by the broker to "signify that delivery of the stock was yet to be made." Furthermore, notwithstanding his case must rest upon the proposition that there was a closed and completed sale in 1928, he would also have us ignore the fact that there was no delivery of the stock until the following year. Neither of which may we do.

Where was the "identifiable event" in 1928 which determined this petitioner's loss in that year? Let us consider the transaction as it was actually consummated, for after all what was actually done—not what was intended to be done but was not in fact done—concerns us most. The broker sold these 2,500 shares short. This meant that one of two things would eventually happen; either (1) the petitioner would make delivery of the specific shares posted as collateral with the bank, though he was under no moral or legal obligation to do so, or (2) "buy in" his short sale, thus completing what had theretofore amounted to an incomplete transaction. If the market price of the shares sold had advanced rather than declined, as contemplated by a short sale, the logical chances are that the petitioner would have made no delivery, at the time, at least, but would have preferred to buy in his short sale and retain the shares which he owned for greater profit. Until the transaction has been so completed there is no identifiable event upon which to predicate a loss.

Viewing the matter from the point of view of what the petitioner says he intended, that is, as an outright sale, we find lacking the one essential characteristic, namely, the giving up of dominion over the subject matter of the sale either symbolically or otherwise. The petitioner not only retained dominion but, in our opinion, absolute ownership of these 2,500 shares until a delivery thereof was made in 1929. He in fact suffered no loss until the happening of this event. Cf. *Charles H. Oshei*, 31 B. T. A. 23.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Smith dissents.