FROST LUMBER INDUSTRIES, Inc. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10160.

Circuit Court of Appeals, Fifth Circuit.

June 11, 1942.

694

Elmo P. Lee, of Shreveport, La., for petitioner.

Newton K. Fox, J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and Rollin H. Transue, Sp. Atty., Bur. Int. Rev., both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Another of those touch and go tax cases where the decision seems to turn not upon the facts as mere facts but upon the emphasis placed upon one fact as opposed to another, the question presented here is whether the profit from a sale of land accrued in 1935, as claimed by the taxpayer, when a binding contract for sale was made and most of the things necessary to be done were done or in 1936 when the title was formally accepted and the purchase money paid.

■■■■ The rule that an item accrues for purposes of taxation when all events have occurred necessary to fix the liabilities of the parties and to determine the amount of such liabilities, seems simple enough, but when in endeavoring to apply it we read the conflicting decisions its attempted application has given rise to, we are reminded of Captain Cuttle's famous dictum, "the bearings of that obserwation lies in the application of it." We are told that the test whether an item of income or or of loss is sustained in a certain year is a practical one, but when we see the different results different supposedly practical men get from applying the same test, we plainly see that what to one practical mind seems heresy, to another equally practical, seems doctrine. In this situation of every mind for itself the solution, we think, is the preferred one which "in cases of doubt gives the benefit to the taxpayer", another rule modernly more often honored in the breach than in the observance. In that view where the taxpayer's books are kept on an accrual basis, where the amount is reasonably certain in fact and determinable in amount, it may be treated as a gain or a loss even though the exact amount may not have been precisely ascertained. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L. Ed. 347; Lucas v. American Code Company, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. Though the computation may be undetermined, if the basis for the computation is unchangeable and though the exact amount may be unknown, if it is not unknowable, the item in such cases is to be treated, for tax purposes, as accrued income. Uncasville Manufacturing Company v. Commissioner, 2 Cir., 55 F.2d 893. In Spring City Company v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 645, 78 L.Ed. 1200, the court said: "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." On the other side are cases like Lucas v. North Texas Company, 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668, where an option was accepted late

in 1916 by a notice from the purchaser which stated that it was ready to close the transaction and pay the purchase price as soon as the transfer papers were prepared by the seller. The papers were not prepared until 1917 and the Court held, citing United States v. Anderson, supra; American National Company v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946, that the profit did not then accrue, since the title and right of possession remained in the vendor until the transaction was actually closed in 1917.

The petitioner is a corporation, keeping its books and making its returns on the accrual method of accounting. On August 2, 1935, the petitioner, then being the owner of 53,947.13 acres, more or less, of land known as the Montrose Tract, in Louisiana, gave the Secretary of Agriculture a twelve month option under the usual terms to purchase it at $6.25 per acre. The option, among other things, provided that if it was availed of the acreage should be determined by survey; that the government might condemn any of the lands for which satisfactory title could not be shown; and that the government's representatives should be permitted to enter the lands, pending vesting of title in the United States, for proper purposes for use and administration for the purposes of the national forests.

On August 23, 1935, the National Forest Reservation Commission notified the petitioner that the purchase had been approved at $6.25 per acre, that the Department of Agriculture "elects to purchase" in accordance with the option, and that, after establishment of boundaries, ascertainment of acreage, and examination of title, payment would be made upon approval of title by the Attorney General, in accordance with statutory requirements. Weeks Law, Act of March 1, 1911, 36 Stat. 961, and Acts amendatory thereof, 16 U.S.C.A. §§ 480, 500, 513–519, 521, 552, 563.

Though the contract for purchase was then completely closed, examination of the title was not begun until late in November, 1935, but so regular was it that though only one-tenth of it had been formally completed in that year and the whole of it was not formally completed until July 28, 1936, the title attorney was able to advise taxpayer before the end of 1935; that the chain of title appeared to be in good condition; that on the basis of past experience he knew that practically all of the titles could be made good; and that such discrepancies as there were in the statement of acreage were very natural and had happened in every title of consequence he had had anything to do with.

Concerned over the probability that if the formal examination was delayed into 1936, the lands would be on the tax rolls for 1935 and 1936 and it would have to pay state and parish taxes for those years, taxpayer conferred with the title attorney relative to executing to the United States and recording in 1935 a deed to the lands. The attorney advised the taxpayer that although the examination was not yet complete, little difficulty with the title was expected and that while the attorney could not advise it to execute and record the deed, as that was a matter for its own counsel to advise on, taxpayer could of course do so of its own motion if so advised. Thereafter, on December 13, 1935, taxpayer executed and placed of record a deed to the United States reciting receipt of consideration of $337,148.62 for 53,943.78 acres, more or less, and warranting title limited to the return of the purchase price fixed at $6.25 per acre for that land to which title might fail.

On the following day taxpayer entered this sale on its books, and in its return for 1935, it reported a profit on it. On the strength of this deed of December 13, 1935, the title attorney before making his report of July 28, 1936, obtained a certificate from the Louisiana Tax Commission, instructing the local tax collectors and sheriffs to remove the lands from the 1935 and 1936 tax rolls. And though the title attorney in his report of July 28, 1936, advised that the deed had been recorded by taxpayer on its own initiative and he thought a new deed for the correct acreage ought to be recorded, and drew up such a deed and had it executed by the seller, upon advice from the attorney general's office he did not record it, and the deed of December 13, 1935, has stood as the basis for transfer of title.

On July 28, 1936, the title attorney reported to the Department of Agriculture that title to 53,898.70 acres had been approved. Petitioner was paid $336,866.87 for this acreage in 1936, and in 1938 received a further payment for 5 additional acres included in the deed making a total acreage approved and paid for of 53,903.-70. Pursuant to condemnation proceedings instituted in 1938, the United States

acquired 9.65 acres included in the option but not approved by the Attorney General, and assessed costs against petitioner in that suit under the warranty contained in the 1935 deed.

The Commissioner determined a deficiency in the petitioner's return for 1936, ruling that the $125,656.41 profit from the transaction constituted income in 1936. On review, the Board of Tax Appeals sustained the Commissioner, on the ground that all the events necessary to fix the obligation and its amount had not occurred by the close of 1935. Petitioner here argues that the gain was so reasonably certain in fact and ascertainable in amount as that it was required to be treated upon an accrual method of accounting as income in 1935 and not in 1936. Respondent contends that in 1935 petitioner had no unconditional right to receive the proceeds; that neither the acreage nor the price had then been determined; and that until the title had been approved in 1936 by the Attorney General, petitioner had no reasonable expectancy of payment.

The petitioner on its part points out that the option agreement fully described the acreage involved, and contained an appraisement of the area, borne out by later events substantially identical with the amount of land accepted. Description of the acreage was in accord with horizontal measurements used in government surveys, and the description appears to have been based on a prior government survey. On the basis of $6.25 per acre, the method of computation was unalterable, and the fact that some slight difference in acreage might call for a greater or lesser total price would not render the computation in any way more uncertain. Where a purchase price is conditional and subject to subsequent abatement, the sale may nevertheless for tax purposes be considered as concluded on the date of its agreement. Helvering v. Nibley-Mimnaugh Lumber Co., 63 App.D.C. 181, 70 F.2d 843. Further, where the price is left to later computation, and dispute arises as to the method of computation, the situation is unchanged even though the settlement is effected by compromise. Schoellkopf Aniline & Chemical Works, Inc., v. United States, Ct.Cl., 3 F.Supp. 417.

When the petitioner was notified that the Department of Agriculture elected to purchase, and the deed was recorded, all that was necessary to fix the obligation of the parties had been done. Tender of payment was not a condition precedent to acceptance of the option; notice of its acceptance converted it into a bilateral contract binding on all of the parties. Wachovia Bank & Trust Company v. United States, 4 Cir., 98 F.2d 609. After the deed was filed, the agreement can no longer be considered as an executory contract with conditions precedent required to be performed before the obligation became fixed. Cf. Lucas v. North Texas Lumber Company, 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; Commissioner v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82. Approval of the title by the Attorney General was an incident which left only the final accounting, and not the obligation, for future determination.

From conversations with the title attorney, who stated that on the basis of his past experience and from his preliminary examination of the chain of title, he was practically certain that the title was or could be made good, the petitioner had a reasonable expectancy of payment. On the basis of the deed recorded in 1935, the title attorney himself secured the removal of the property, from the state and local tax rolls. Moreover, the government treated the deed as an effectual conveyance; it entered upon the land and sold timber therefrom; it held petitioner liable on its warranty in the deed in assessing costs of subsequent condemnation proceedings against the petitioner; it required no subsequent amendment or correction of the deed. Although the price had not then been paid, the conduct of seller and purchaser after its recording establishes that for tax purposes it was a closed transaction. Cf. Commissioner v. Union Pacific Railroad Company, 2 Cir., 86 F.2d 637.

The order of the Board is reversed and the cause is remanded with instructions to redetermine the deficiency in accordance herewith.

Reversed and remanded.