Charles J. and Annis Snider, et al. [1] v. Commissioner. Snider v. Commissioner
Docket Nos. 3503-68, 3504-68, 3541-68, 3560-68, 3561-68.
United States Tax Court
T.C. Memo 1970-241; 1970 Tax Ct. Memo LEXIS 117; 29 T.C.M. (CCH) 1058; T.C.M. (RIA) 70241; August 26, 1970, Filed. *117 Under the terms of an executory contract to sell closing was to be effective 12:01 a.m., Jan. 1, 1966. Title and possession passed to the purchaser on Jan. 1, 1966. Held, the loss incurred on the sale by the seller, a partnership that maintained its books on a calendar year basis, was sustained during 1966. Ronald M. Mankoff and Wentworth T. Durant, 3434 First National Bank Bldg., Dallas, Tex., for the petitioners. D. Ronald Morello, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: Respondent determined deficiencies in the petitioners' income taxes and additions to tax under section 6653(a) [2] as follows: Dkt. No.
Taxable Year Ended
Deficiency
Additions to TaxSec. 6653(a)
3503-68
Dec. 31, 1965
$22,310.54
$1,115.53
Dec. 31, 1966
14,454.94
722.74
3504-68
Dec. 31, 1965
22,414.14
1,120.71
Dec. 31, 1966
11,759.65
587.98
3541-68
Dec. 31, 1965
$12,158.78
$ 607.94
Dec. 31, 1966
4,808.35
240.41
3560-68
Dec. 31, 1965
11,681.82
584.09
Dec. 31, 1966
3,726.00
186.30
3561-68
Dec. 31, 1965
13,486.27
674.31
Dec. 31, 1966
8,204.26
410.21
*118 1059 All disputes involving the adjustments made in the notices of deficiency have been resolved either by stipulation, concession at trial, or abandonment resulting from the failure of the petitioners to discuss adjustments that were not settled by stipulation or concession. The parties present for our consideration only the question of the proper taxable year for a partnership that maintained its books on a calendar year basis to accrue the loss that it incurred on the sale of its lumber business. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference. The petitioners in each of the cases consolidated herein are husband and wife. At the time of the filing of the petitions, the petitioners in each of the cases consolidated herein resided in Marshall, Texas. For the taxable years here in question, they filed their joint income tax returns with the district director of internal revenue, Dallas, Texas. The petitioners each owned an interest in the Snider Lumber Co. (hereinafter "the partnership") which operated a lumber business on land leased from D. R. and Roy Snider. D. R. Snider, *119 who is now deceased, was the father of petitioners Charles J. and Joe A. Snider, and Roy Snider is the father of petitioners Glenda S. Knutson and Elliott P. and Ronald L. Snider. The lease expired on February 15, 1965, however, the partnership continued to occupy the premises without a lease. The partnership kept its books and records and prepared its tax information returns on the accrual method of accounting and used as its annual accounting period the calendar year. At some time prior to November 3, 1965, Robert G. Maloney discussed the possibility of purchasing the partnership's business with petitioner Charles J. Snider. Mr. Maloney, who was not related to the Snider family, had been employed from 1946 to 1952 in the lumber business that was being conducted by the partnership in 1965. On November 3, 1965, the partnership sent a letter to Mr. Maloney, who was then a resident of Dallas, Texas. The letter, which was signed by petitioner Charles Snider, stated in relevant part: My partners and I would appreciate an opportunity to show you our facility and give you an opportunity to make us an offer for it. On December 8, 1965, Mr. Maloney caused the Snider Lumber Co., Inc. *120 (hereinafter "the corporation") to be incorporated. Mr. Maloney has been, and is, the sole stockholder of the corporation. On December 20, 1965, the board of directors of the corporation approved a motion that the corporation offer to purchase the lumber business conducted by the partnership. The offer approved by the board of directors was contained in a letter dated December 20, 1965 and addressed to petitioner Charles J. Snider. The letter, which was signed by Mr. Maloney, stated in relevant part that: I am willing to buy your plant if you and your partners can see fit to sell it to me under the conditions set forth below. I will issue you and your partners notes for the facility and pay these off as rapidly as possible. I will pay you the following amounts and assume the following indebtedness and assets. For your buildings, equipment, and rolling equipment, including logging equipment, I will pay $125,325.13. For your inventories, lumber, logs, timber, etc., I will pay $446,989.75. I will pay you for your good accounts receivable, deposits, employee advances, prepaid insurance less accounts payable and employee insurance payable at values determined as of closing date. *121 This offer is contingent on my being able to negotiate a suitable lease on the plant site property. I have been in contact with the property owners and it appears that the lease can be worked out. I will appreciate an answer to this offer within the next few days. On December 23, 1965, the partnership sent a letter to Mr. Maloney accepting the offer of purchase. This letter, which was signed by petitioner Charles Snider, stated in relevant part that: I have discussed your offer of December 20, 1965 with my partners and we have decided to accept your offer. We would like to close the transaction effective 12:01 AM January 1, 1966, since our year ends December 31, 1965. 1060 At some time prior to December 31, 1965, D. R. and Roy Sinder agreed to the terms of the lease that they subsequently entered into with the corporation on January 1, 1966. The partnership was informed of this agreement. Mr. Maloney entered onto the premises of the lumber company and selected and occupied an office prior to December 31, 1965. The office of the lumber company closed at 5 p.m. on December 31, 1965. The partnership closed its books, other than its payroll records, at the close of *122 business on December 31, 1965. The partnership retained all receipts received prior to the close of business on December 31, 1965. The payroll records of the partnership were kept on the basis of a work week that began on Thursday and ended on the following Wednesday. The partnership closed its payroll records on Wednesday, December 29, 1965. The corporation kept its payroll records on the same basis and on the same type of record sheets that had been used by the partnership. Accordingly, the payroll records of the corporation for its first week began on Thursday, December 30, 1965 and ended on Wednesday, January 5, 1966. In the last part of December 1965, Mr. Maloney contacted the insurance agent who handled insurance coverage for the partnership and informed him that the corporation was acquiring the property of the partnership. Endorsements changing the name of the various policies from the partnership to the corporation were made in the early part of January 1966. The corporation reimbursed the partnership for advance premiums on the various policies paid by the partnership for coverage subsequent to December 31, 1965. The following bill of sale was executed on January 1, 1966: *123 THE STATE OF TEXASCOUNTY OF HARRISON
KNOW ALL MEN BY THESE PRESENTS: That we, Elliot Snider, R. L. Snider, Charles J. Snider Joe A. Snider, and Elliot Snider and/or R. L. Sniderb Trustee for the use and benefit of Glenda Snider Knutson, D/B/A SNIDER LUMBER Co., of the County of Harrison, State of Texas, for and in consideration of the sum of Ten and no/100 Dollars cash to us in hand paid by SNIDER LUMBER COMPANY, a Texas Corporation, receipt of which is expressly acknowledged, and other good, valuable and adequate considerations had and received by us, have bargained, sold and delivered, and by these presents do bargain, sell and deliver unto the said SNIDER LUMBER COMPANY, the following described personal property located in Harrison CountyTexas, to-wit: Sawmill, Planing Mill, Dry Kilns, Lumber Sheds, Yard Equipment, Shop Building and parts, Office Building and Equipment, Trucks, Trailers, Autos, Loaders, Crawler tractors, Logging Equipment, Mill Buildings, located on the property owned by Roy Snider and D. R. Snider in the James Chaffin Survey in Harrison County, Texas, said property located about three miles north of the city of Marshall, Texas. Also, all the standing *124 timber, accounts receivable, Employee Advances, Prepaid Insurance, Deposits, Accounts Payable, Employee Insurance Payable, purchased and owned by the above mention [sic] persons located within and without the County of Harrison, State of Texas: It being the intention hereof to sell and deliver to the above-named grantee all of the property and assets of Elliot Snider, R. L. Snider, Glenda Snider Knutson, Charles J. Snider, Joe A. Snider doing business as SNIDER LUMBER Co., and used in connection with the operation of said SNIDER LUMBER Co. And we do hereby bind ourselves, our heirs, executors, administrators and assigns to forever Warrant Defend the title to the said property unto the above-named grantee. Witness my hand at Marshall, Texas, this the 1st day of January, 1966. A lease of the land on which the lumber business was operated was also executed on January 1, 1966. No payment of the purchase price was made in 1965. ,the parties to the sale did not intend to pass title or possession to the property prior to the execution of the bill of sale on January 1, 1966. The partnership determined that it realized neither gain nor loss on the sale of its business, and it *125 reported no gain or loss as a result of that sale on its information return for 1965. The partnership did not file an information return for 1966. The petitioners did not report any gain or loss from the sale of the partnership business to the corporation either on their 1965 or 1966 tax returns. 1061 As a result of adjustments made by the respondent, the correctness of which are not in dispute, it has been determined that the partnership realized a loss on the sale. If this loss is to be recognized in 1965, it will directly offset the agreed deficiencies in tax. However, if the loss is to be recognized in 1966, it will offset the agreed deficiencies only as a net operating loss. Opinion Section 165 is generally concerned only with realized losses. See Weiss v. Wiener, 279 U.S. 333 (1929); Lucas v. American Code Co., 280 U.S. 445 (1930). Section 165(a) provides that: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Realized losses on the sale of property are those losses that are sustained during the taxable year in closed transactions. See *126 section 1.165-1(d)(1); Morco Corporation, 300 F. 2d 245 (C.A. 2, 1962), affirming a Memorandum Opinion of this Court; Joseph Z. Muir, et al., 4 B.T.A. 893 (1926). The transaction in question became closed and the petitioners sustained their loss when the sale was consummated. See Rich Lumber Company v. United States, 237 F. 2d 424 (C.A. 1, 1956); Joseph Z. Muir, et al., supra. No single factor invariably controls the determination as to when a sale was consummated; the transaction must be viewed as a whole and in the light of realism and practicality. See Commissioner v. Segall, 114 F. 2d 706 (C.A. 6, 1940), certiorari denied 313 U.S. 562 (1941); Rich Lumber Company v. United States, supra; Morco Corporation v. Commissioner, supra. As was first pointed out by the court in Commissioner v. Segall, supra, some of the factors to be considered are passage of title ( Frost Lumber Industries v. Commissioner, 128 F. 2d 693128 F. 2d 693 (C.A. 5, 1942), reversing 44 B.T.A. 1249 (1941); Rich Lumber Company v. United States, supra), transfer of *127 possession ( Helvering v. Nibley-Mimnaugh Lumber Co., 70 F. 2d 843 (C.A. D.C. 1934), remanding 26 B.T.A. 978 (1932); Commissioner v. Union Pac. R. Co., 86 F. 2d 637 (C.A. 2, 1936), affirming 32 B.T.A. 383 (1935); Rich Lumber Company v. United States, supra), and substantial performance of conditions precedent so as to impose on the purchaser an unconditional duty to pay. Lucas v. North Texas Co., 281 U.S. 11 (1930). Commissioner v. North Jersey T. Ins. Co., 79 F. 2d 492 (C.A. 3, 1936), reversing a Memorandum Opinion of this Court. Title to the property that made up the lumber business was not formally transferred until the contract of sale was executed on January 1, 1966. Possession did not pass to the corporation prior to the execution of the contract of sale. The fact that the partnership allowed Mr. Maloney to enter onto the premises and occupy an office prior to December 31, 1965 does not indicate that the partnership transferred possession of the premises to the corporation. The partnership occupied the premises through December 31, 1965 and retained all proceeds from the sales made *128 in the ordinary course of business through that date. The partnership apparently continued to direct and control the employees through December 31, 1965 and even though the partnership's pay period closed on December 29, 1965. The partnership paid the premiums on, and remained the insured under, the insurance coverage. Furthermore, the corporation during 1965 was not unconditionally bound to pay the sales price. After the lease was negotiated in 1965, the letters of December 20 and 23, 1965 reflected nothing more than an executory contract to sell whereby the parties agreed to enter into a contract of sale on January 1, 1966. Title and right of possession remained in the partnership until the transaction was closed. Consequently, the corporation's unconditional liability for the purchase price did not exist during 1965. The petitioners contend that prior to the adoption of the Uniform Commercial Code in Texas, title passed on the making of an unconditional contract. However, that was the rule only when the contract was silent on the matter. 50 Tex. Jur. 2d 449. The contract to sell fixed the closing at 12:01 a. m., January 1, 1966. The petitioners request that we find that possession *129 of the property was in the hands of the corporation when the petitioners left the premises at the close of business 5:00 p. m. on December 31, 1965. To grant this request, we would have to ignore the contract to sell which clearly shows that the 1062 petitioners intended to pass both title [3] and possession to the corporation on January 1, 1966. *130 The petitioners placed great stress on the fact that the partnership used the accrual method of accounting. In their view, the executory agreement entered into in 1965 to convey title to property in 1966 constituted a sufficiently consummated sale to allow the accrual of the loss even if possession and title remained in the partnership. Notwithstanding the method of accounting used by a taxpayer, only those losses "sustained" are allowable. Losses are not sustained by reason of an executory contract to sell. Rich Lumber Company v. United States, supra; Joseph Z. Muir, et al., supra. To the extent that the partnership's method of accounting is relevant, it cannot be said that the executory contract to sell was sufficient to fix the loss on the sale. See Rich Lumber Company v. United States, supra. The petitioners' reliance on Frost Lumber Industries v. Commissioner, supra, is misplaced. In that case an accrual basis taxpayer reported gain from the sale of real property on its 1935 tax return. In upholding the taxpayer's right to report the gain in 1935, the court pointed out that the taxpayer had executed and recorded a deed *131 in favor of the purchaser in 1935 and that, after the deed was filed, the agreement between the parties could no longer be considered an executory contract. The transaction was closed after the recording and all that remained to be done was the payment of the purchase price. In contrast, the petitioners in the instant case wish to accrue a loss on an executory contract. In order to reflect the adjustments on the conceded and abondoned issues and the computations required for the net operating loss deductions. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Joe A. and LaJuan Snider, docket No. 3504-68; Elliott P. and Frankie Snider, docket No. 3541-68; Don O. and Glenda S. Knutson, docket No. 3560-68; and Ronald L. and Annabelle H. Snider, docket No. 3561-68.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. The Supreme Court indicated in Lucas v. American Code Co., supra, that a loss that is not absolutely realized may nevertheless give rise to a deduction if the seller's obligation to deliver is so fixed that the loss is reasonably certain in fact and ascertainable in amount. This exception to the general rule that a deduction is allowed only for a realized loss has been held applicable where the circumstances surrounding the sale of stock have indicated an intention to pass title prior to delivery. Ruml v. Commissioner, 83 F. 2d 257 (C.A. 2, 1936), reversing 31 B.T.A. 534 (1934); Huntington Nat. Bank v. Commissioner, 90 F. 2d 876 (C.A. 6, 1937), affirming 32 B.T.A. 342↩ (1935). On the basis of this record we have found no intention to pass title prior to January 1, 1966 and thus have not considered the applicability of this exception to sales other than sales of listed stock or securities.