Charles J. and Annis SNIDER et al., Petitioners-Appellants-Cross Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee-Cross Appellant.

No. 71–2340.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1972.

Wentworth T. Durant, Ronald M. Mankoff, Dallas, Tex., for petitioners-appellants.

Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., U. S. Dept. of Justice, K. Martin Worthy, Chief Counsel, Edward D. Robertson, Atty., I. R. S., Issie L. Jenkins, Ernest J. Brown, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

█ This is an appeal from a decision of the United States Tax Court in favor of the Commissioner. The issue presented is whether a deductible loss, which was realized by accrual-method taxpayers on the sale of their lumber mill, was to be accrued in 1965 when a contract of sale was entered into or in 1966 when the bill of sale was delivered and the sale price was paid.[1] Taxpayers used the calendar year as their accounting period.

Taxpayers were formerly partners doing business as the Snider Lumber Company (hereinafter the Partnership). Maloney, a former employee, who knew the partners were interested in selling, incorporated under the name, Snider Lumber Company, Inc. (hereinafter the Corporation). On December 20, 1965 he made an offer by letter to buy the Partnership assets. The letter provided in relevant parts:

I am willing to buy your plant if you and your partners can see fit to sell it to me under the conditions set forth below.

I will issue you and your partners notes for the facility and pay these off as rapidly as possible. I will pay you the following amounts and assume the following indebtedness and assets.

For your buildings, equipment, and rolling equipment, including logging equipment, I will pay $125,325.13.

For your inventories, lumber, logs, timber, etc. I will pay $446,989.75.

I will pay you for your good accounts receivable, deposits, employee advances, prepaid insurance less accounts payable at value determined as of closing date.

This offer is contingent on my being able to negotiable (sic) a suitable lease on the plant site property. I have been in contact within the property owners and it appears that the lease can be worked out.

---

1. The mill was sold for an amount equal to the taxpayers' adjusted cost basis, so no loss or gain was reported. Subsequently, the Commissioner disallowed certain prior deductions for depreciation. These amounts were added back to the adjusted cost basis resulting in a loss on the sale. Neither the adjustments in depreciation nor the deductibility of the loss on the sale are in issue. The only question before us is the year in which the deduction is to be accrued. This question is, of course, not academic. If the loss accrued in 1965 it is fully deductible, if in 1966 it is reduced substantially by the carry-back provisions of the Internal Revenue Code.

I will appreciate an answer to this offer within the next few days.

On December 23, 1965 the Partnership accepted the offer in a letter signed by appellant Charles Snider:

I have discussed your offer of December 20, 1965 with my partners and we have decided to accept your offer.

We would like to close the transaction effective 12:01 a. m. January 1, 1966, since our year ends December 31, 1965.

Prior to December 31, Maloney reached agreement on a lease with the owner of the plant site property. On December 31 he entered the mill premises and occupied an office. The Partnership closed its books other than payroll records at the end of the business day on December 31 and retained all receipts received up to that time. The Partnership payroll records were closed December 29 and the Corporation payroll records were commenced December 30. Insurance endorsements changing the named insured from the Partnership to the Corporation were signed in January, 1966 but the Corporation reimbursed the Partnership for all coverage subsequent to December 31. On January 1, 1966, presumably at some time other than 12:01 a. m. sharp, the bill of sale and lease were executed, and the purchase price paid.

Int.Rev.Code of 1954, §§ 165(a) and 461(a) provide:

§ 165(a) General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

.    .    .    .    .    .

§ 461(a) General Rule.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

Treasury Regulation § 1.446–1(c) (ii) provides in part:

Accrual Method . . . Under such a method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy.

The Tax Court held for the Commissioner, believing that the signing of the bill of sale was one of the "events" that had to occur to "establish the fact of the liability." We disagree and reverse.

This is

[a]nother of those touch and go tax cases where the decision seems to turn not upon the facts as mere facts but upon the emphasis placed upon one fact as opposed to another    .    .    .

Frost Lumber Indus. Inc. v. Commissioner, 5th Cir. 1942, 128 F.2d 693, 694 (Hutcheson, J.).

The Tax Court chose to emphasize the January, 1966 closing, while we believe emphasis should be placed on the contract of sale, the agreement on lease terms, and the fixing with reasonable accuracy of the amount of the loss on the sale, all of which had occurred by 5:00 p. m. December 31, 1965.

We think *Frost, supra,* controls the instant case. In *Frost* the sale of timber land was at issue. The terms of sale were agreed upon in 1935 but the title search lasted well into 1936. Therefore, neither the exact acreage nor price were firmly set in 1935. Nevertheless, this Court, reversing the Board of Tax Appeals, held that the accrual-method taxpayer's income from the sale was realized in 1935 rather than in 1936 "when the title was formally accepted and the purchase money paid." *Frost* at 694. The *Frost* Court said:

The rule that an item accrues for purposes of taxation when all events have occurred necessary to fix the liabilities of the parties and to determine the amount of such liabilities, seems simple enough, but when in endeavoring to apply it we read the conflicting decisions its attempted application has given rise to, we are reminded of Captain Cuttle's famous

dictum, "the bearings of that observation lies in the application of it." We are told that the test whether an item of income or of loss is sustained in a certain year is a practical one, but when we see the different results different supposedly practical men get from applying the same test, we plainly see that what to one practical mind seems heresy, to another equally practical, seems doctrine. . . . [W]here the taxpayer's books are kept on an accrual basis, where the amount is reasonably certain in fact and determinable in amount, it may be treated as a gain or a loss even though the exact amount may not have been precisely ascertained. . . . Though the computation may be undetermined, if the basis for the computation is unchangeable and though the exact amount may be unknown, if it is not unknowable, the item in such cases is to be treated, for tax purposes, as accrued income.
128 F.2d at 694.

Appellants' case is even stronger than that of the taxpayer in *Frost*.[2] In the instant case the only condition in the Corporation's offer was its reaching agreement on a lease with the landowner of the mill site. This condition was fulfilled prior to January 1, 1966. At that point the liability of the parties was fixed. The only question remaining for this Court, therefore, is whether the amount of the deduction could "be determined with reasonable accuracy" in 1965. Treas.Reg. § 1.446–1(c) (ii), *supra*. We believe it could be. In contrast to *Frost*, which held that income from a sale of land accrued in 1935 even though the exact acreage and price were not known until July, 1936, in the instant case the only terms not specifically set in the Corporation's offer of December 20 [3] were determinable with reasonable accuracy on December 23 when the partnership accepted the offer, and with virtually precise accuracy at 5:00 p. m. December 31, 1965 when the Partnership closed its books and ceased to do business.

In Gillis v. United States, 5th Cir. 1968, 402 F.2d 501, 506, this Court said:

The theory behind the accrual system is not complicated. Income items are reported in the year in which the right to receive them becomes fixed even though such items are not immediately receivable. At no time, however, are such items reportable later than the year of actual receipt. So it is with deductions. Items to be deducted are reported in the year in which they are incurred, that is, the year in which the liability to pay such items becomes fixed and the amount is reasonably ascertainable even though the payment is not then due. . . . For this reason it is recognized that an item should be accrued "when (1) all the events have occurred which fix the amount of the claim and determine the question of liablity; (2) the amount is readily ascertainable; and (3) the liability therefor is determined rather than contingent." 2 Mertens, Law of Federal Income Taxation § 12.76 at p. 306.

We shall not further belabor the law in this area, since we think the Tax Court and the Commissioner are in gen-

---

2. The Commissioner urges that *Frost* is distinguishable from the instant case because there in 1935 the taxpayer recorded a deed reflecting the sale. We realize there is language in the opinion that can be read to give recordation of the deed special significance. We believe, however, this was not the determinative factor in *Frost* but rather only one factor indicating that liability of the parties was fixed in 1935. The seller recorded the deed solely for the purpose of avoiding Louisiana property taxes for 1936. Recordation was, therefore, of limited significance to the federal tax consequences of the sale. Surely a taxpayer cannot control the imposition of federal taxes by such a gratuitous unilateral act.

3. "I will pay you for your good accounts receivable, deposits, employee advances, prepaid insurance less accounts payable at values determined as of closing date." See text of full offer, *supra*.

eral agreement with the principles enunciated in *Frost* and *Gillis*. The difficulty in this case is not in ascertaining the law or the facts but in the application of the law to the facts. We reverse the Tax Court because we believe the Internal Revenue Code and this *Court's* decision in *Frost* dictate that the liability of the parties to the sale of the mill was fixed and the amount of the liability either "readily ascertainable," *Gillis, supra*, or determinable "with reasonable accuracy," Treas.Reg. § 1.446–1(c) (ii) in 1965. The January closing was, we believe, as in *Frost*, a formality rather than the event that fixed the liability of the parties.[4]

Our decision that taxpayers' deductible loss was properly attributable to 1965 requires that we also reverse the Tax Court's finding of an overpayment in 1966 and remand the case to the Tax Court for a determination of tax liabilities for 1966, without the benefit of the loss that had been attributed to that year.

Reversed and remanded with directions.

4. Fed.R.Civ.P. 52 applies to decisions of the Tax Court. Tax Court findings of fact are, therefore, not to be set aside by a court of appeals unless clearly erroneous. We take note of this because the Commissioner implied in his brief that review in this case should be on the basis of the clearly erroneous standard. We disagree. The facts in this case are not in dispute. The controversy is over the legal conclusions to be drawn from the facts.