UNITED STATES of America,
Plaintiff-Appellee,

v.

Conrad Jules BRAUN, Defendant-Appellant.

No. 94-3847.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1995.

Decided July 13, 1995.

Susan M. Hunt, Kansas City, MO, argued (Elena M. Franco, on the brief), for appellant.

Linda L. Parker, Asst. U.S. Atty., Kansas City, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellant Conrad Braun appeals his sentence under the United States Sentencing Guidelines. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 (1988), and we affirm.

## I. BACKGROUND

In 1976, Braun founded Gold Standard Corporation (Gold Standard). Gold Standard was in the business of minting and selling precious metals to individuals throughout the United States. Braun, who employed up to five or six persons at Gold Standard at any one given time, was the sole owner, president, and manager of Gold Standard.

Gold Standard offered an investment program called the 49er's Club. Members paid an initial $49.00 membership fee which obli-

gated them to purchase at least $49.00 each month in either silver, gold, or platinum. If no selection was made for any given month, the member was billed that amount based on the closing prices on the last business day of the month for the precious metal that the investor had most recently purchased. The precious metals were to be held in the member's account until the account reached $2,500.00. At that point, the precious metals were either shipped to the customer at Gold Standard's expense, or, in the alternative, held in a safety deposit box in the Gold Standard vault.

Between 1982 and 1989, Gold Standard collected approximately $17,000,000.00 from 49er's Club members for the purchase of precious metals. Monthly statements were mailed to members which purported to represent the amount of precious metals that had been purchased on their accounts and billing them for the purchases. Beginning in 1982, Braun started diverting payments from the 49er's Club in order to invest in the commodities market. From 1982 until 1989, Braun misappropriated $5,500,636.50 in members' funds. By 1984, at least some of Braun's employees became aware that he was diverting members' funds in order to invest in the commodities market. From 1983 until 1989, Braun directed Gold Standard employees to issue monthly invoices purportedly representing precious metals purchases made on 49er's Club members' accounts, when, in fact, no such purchases had been made or were made only when the members demanded shipment. Two of those employees routinely assisted Braun in diverting 49er's Club funds for the commodities market by determining what amount of money Gold Standard was receiving minus the amount required to purchase precious metals for those members who had reached the $2,500.00 plateau or requested shipment.

Braun's foray into the commodities market was not profitable. His misappropriations resulted in a total loss of $1,966,694.19. As a result, Gold Standard was unable to meet its obligations to approximately 550 members.

On September 7, 1993, a grand jury indicted Braun for five counts of mail fraud in violation of 18 U.S.C. § 1341 and § 2, five counts of wire fraud in violation of 18 U.S.C. § 1343 and § 2, and five counts of interstate transportation of funds obtained by fraud in violation of 18 U.S.C. § 2314 and § 2.

On April 21, 1994, Braun pleaded guilty to five counts of wire fraud and five counts of interstate transportation of funds obtained by fraud. During the sentencing hearing, the district court [1] found that Braun, as the founder, sole owner, president, and manager of Gold Standard, was the organizer, leader, manager, and supervisor of the criminal activity. This finding resulted in an increase of two offense levels under United States Sentencing Guidelines § 3B1.1(c). Braun was subsequently sentenced to 90 months imprisonment and ordered to pay $1,966,694.19 in restitution. Braun now appeals his sentence.

## II.  DISCUSSION

■  U.S.S.G. § 3B1.1(c) provides for a two offense level increase if the defendant was an organizer, leader, or supervisor in any criminal activity involving less than five participants. The application notes make it clear that in order to qualify for an adjustment under this section, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n.2). The enhancement is not appropriate where the defendant is the sole participant in the criminal activity. *United States v. Rowley*, 975 F.2d 1357, 1364 n. 6 (8th Cir.1992). Braun argues that the two-level enhancement was inappropriate because he was the only participant in the criminal activity.

### A.  Standard of Review

■  Before reaching the merits of this argument, we must first determine the applicable standard of review. The United States argues that the "plain error" standard governs this appeal because Braun failed to raise this sentencing issue before the district court. *See United States v. Montanye*, 996

---

**1.** The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

F.2d 190, 192 (8th Cir.1993) (en banc). It asserts that the sole argument presented by Braun at the sentencing hearing was whether an organization that performs lawful acts as well as unlawful acts qualifies as a "criminal activity" for purposes of U.S.S.G. § 3B1.1(c).

Braun replies that the issue of whether he was the sole participant in the criminal activity was properly preserved for appeal. We agree. At the sentencing hearing, Braun's counsel also argued that U.S.S.G. § 3B1.1 was inapplicable to Braun because he was the only one who engaged in the "trading" and the only one that profited from the illegal activity. The district court, however, found that Braun's employees, either knowingly or unknowingly, "were essential to the carrying out of the scheme" through recordkeeping and fraudulent communications with investors. As a result, we review the district court's assessment of Braun's role in the offense under a clearly erroneous standard. *United States v. Ballew*, 40 F.3d 936, 944 (8th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1813, 131 L.Ed.2d 737 (1995).

**B. U.S.S.G. § 3B1.1(c)**

■ Braun argues that he was the sole participant in the criminal activity. While he admits to employing several individuals at Gold Standard, he argues that none of them benefitted from his illegal activity, nor did they take part in the diversion of funds or investment in the commodities market. He also emphasizes the fact that none of his employees were charged with any criminal activity.

We do not believe these distinctions to be well taken. The U.S.S.G. Application Notes define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). Therefore, the facts that none of Braun's employees benefitted from the commission of the offense or were convicted of any offenses arising from the criminal activity do not necessarily determine the ultimate issue. The key determination is whether Braun's employees were also criminally responsible for the commission of the offense.

The record amply supports the district court's finding that Braun's employees both knowingly and unknowingly aided him in the commission of the instant offenses. The numerous employees employed by Braun at Gold Standard aided in the commission of the offenses both by soliciting new members to cover the ongoing commodities market losses and by sending fraudulent invoices to existing members. Without this aid, Braun would have been unable to continue his fraudulent scheme. Several of those employees were aware as early as 1982 that Braun was fraudulently diverting members' funds into the commodities market, including Braun's office manager who repeatedly confronted Braun regarding the fact that she was mailing false monthly statements when, in fact, there was no money in those members' accounts. As such, we do not find the district court's finding that Braun was the leader and organizer of a multi-participant criminal activity to be clearly erroneous. *See United States v. Nelson*, 5 F.3d 254, 258 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 937, 127 L.Ed.2d 228 (1994) (vice president who participated in the creation of orders reflecting phony sales to a fictitious company, vice president who falsified freight orders to document fictitious sales, and billings clerk who created fictitious invoices at the direction of defendant were criminally responsible participants in bank fraud scheme for purposes of U.S.S.G. § 3B1.1).

**III. CONCLUSION**

For the aforementioned reasons, we affirm the sentence of the district court.