# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3841

_____

United States of America

*Plaintiff - Appellee*

v.

Mickey Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 15, 2012
Filed: August 17, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Mickey Johnson pled guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, in connection with a mortgage fraud scheme. At sentencing, the district court[1] calculated an advisory sentencing guidelines range of 33 to 41 months'

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

imprisonment based on a total offense level of 20 and a criminal history category of I. The district court sentenced Johnson to a term of 33 months' imprisonment, and Johnson now appeals the sentence. We affirm.

In 2005, Mickey Johnson and Jeremy Beadle worked together at Premier Mortgage Funding ("PMF") in Lake Saint Louis, Missouri. That year, Johnson approached Beadle and proposed that they purchase, renovate, and sell five properties in the 3900 block of Labadie Avenue in Saint Louis, Missouri, because Johnson believed the neighborhood was "coming back." They agreed that Johnson would oversee the renovations, Beadle would provide the financing, and they would each have a fifty-percent share in the venture. Beadle subsequently served as the purchaser-of-record for the properties and provided financing for the renovations, which Johnson oversaw. After a series of thefts and incidents of vandalism, Johnson and Beadle decided to sell the properties as quickly as possible to stop their "hemorrhaging financial losses."

Johnson recruited Robert Shaw, whom Johnson had met previously at a seminar for real estate investors, to purchase two of the properties. Johnson served as Shaw's loan officer so that Shaw could obtain loans through PMF for both of the properties. Although Johnson was fully aware of Shaw's actual income and intent to purchase the properties as investments, Johnson overstated Shaw's income on the loan applications and falsely indicated that Shaw would purchase each property as his primary residence. When Shaw stated that he did not want to do anything illegal, Johnson assured him that this was standard procedure in the mortgage business. Johnson also arranged for Beadle to provide Shaw with funds for the down payments for the properties and for renovations after purchase, but Johnson never mentioned the renovation money on the loan applications and affirmatively indicated that Shaw was providing the down payments. Johnson also inflated the sale price for the properties so that some of the resulting inflated loan proceeds could be used to reimburse Beadle for the down payment and renovation funds he had provided to

Shaw. After Shaw approved the applications for submission despite the misrepresentations, Johnson filed the applications. Johnson similarly submitted fraudulent loan applications so that Beadle could sell two of the remaining three properties to Rebecca Domecillo, another colleague at PMF, and Michael Skarl, Domecillo's son. Each of the four properties ended up in foreclosure. Beadle was unable to sell the fifth property, and it also ended up in foreclosure. Shaw eventually declared bankruptcy after he was unable to satisfy the deficiency judgments from the foreclosures of his two Labadie Avenue properties.

A grand jury subsequently indicted Johnson on four counts of wire fraud, one count for each of the loans for the four Labadie Avenue properties that were sold. After Beadle and Domecillo pled guilty to fraud charges and after Shaw and Beadle testified against Johnson at his trial, Johnson pled guilty to the two counts relating to the loans to Shaw. At sentencing, Johnson objected to the probation office's conclusion in the Presentence Investigation Report that he qualified for a two-offense-level aggravating role enhancement. *See* U.S.S.G. § 3B1.1(c) (providing for a two-level offense level increase for "an organizer, leader, manager, or supervisor in any criminal activity"). Johnson argued that Beadle was more culpable than he because Beadle was his employer and provided the capital for the scheme. The district court concluded that Johnson qualified for the two-level increase because he recruited Shaw to purchase the properties, prepared and filed Shaw's, Domecillo's, and Skarl's loan applications despite knowing that they contained numerous materially false representations, and assured Shaw that the paperwork was properly completed despite the known misrepresentations. Johnson now appeals his sentence.

When reviewing a sentence, we first evaluate whether the district court committed significant procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). Johnson now contends that the district court erroneously applied the aggravating role enhancement under U.S.S.G. § 3B1.1(c) because Shaw—due to his reliance on Johnson's assertions that the misrepresentations were acceptable—was not a

criminally responsible party, and therefore there was nobody for Johnson to "lead." *See* U.S.S.G. § 3B1.1 cmt. n.2 ("To qualify[,] . . . the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."); *id.* cmt. n.1 ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."). We ordinarily review the district court's factual findings underlying the imposition of a sentencing enhancement for clear error, *United States v. McDonald*, 521 F.3d 975, 978 (8th Cir. 2008), and its application of the sentencing guidelines *de novo*, *United States v. Richart*, 662 F.3d 1037, 1045 (8th Cir. 2011) *cert. denied*, 566 U.S. ---, 132 S. Ct. 1942 (2012). Although Johnson objected to the imposition of the aggravating role enhancement at the time of sentencing, he did not raise the issue of whether Shaw qualified as a "participant." Thus, we review this issue only for plain error. *See United States v. Ali*, 616 F.3d 745, 751-52 (8th Cir. 2010). For us to find plain error, Johnson would have "to show that (1) there was an error that was not affirmatively waived, (2) the error was 'plain,' meaning clear and obvious, (3) the error affects his substantial rights, and (4) the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 752 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

We reject Johnson's argument that it was clear and obvious at the time of sentencing that Shaw was not a "participant" within the meaning of U.S.S.G. § 3B1.1. Shaw testified that—prompted by Johnson—he knowingly overstated his income on the two loan applications, knowingly and falsely indicated that he would occupy each purchased property as his primary residence, and knowingly under-reported the sellers' financial concessions in the sales. He also testified that he signed an acknowledgment that the information in the applications was accurate and that he understood that submitting false information violated the law. Shaw affirmed that, although he had indicated to Johnson that he did not want to do anything illegal in the loan applications, he nonetheless was responsible for the misrepresentations they contained. Furthermore, at his sentencing hearing, Johnson himself declared that

Shaw "is not a victim" in this case because he "knew fully well" what he was doing. In the face of such evidence, Johnson has not met his burden of establishing that it was clear and obvious that Shaw was not a participant within the meaning of U.S.S.G. § 3B1.1. Because Johnson's acts of recruiting Shaw into the criminal enterprise and directing him on how to obtain the fraudulent loans were sufficient to justify the enhancement, *see United States v. Umanzor*, 617 F.3d 1053, 1060 (8th Cir. 2010) ("[A] defendant may qualify for the enhancement [under U.S.S.G. § 3B1.1] if he directs the actions of only one other participant."), we reject Johnson's procedural challenge to his sentence.[2]

Johnson also contends that the sentence is substantively unreasonable because Beadle received a sentence of probation and Domecillo only received an 18-month sentence of imprisonment even though both Beadle and Domecillo were "more culpable" and responsible for "far more extensive fraudulent transactions and losses" than he was. Johnson maintains that although some of the "gross disparity" between their sentences and his sentence can be explained by their substantial assistance to the Government, this difference does not fully justify "the vast degree of disparity in their respective sentences." He argues that the remaining disparity rebuts the presumption of reasonableness we apply to within-guidelines sentences. *See United States v. Lazenby*, 439 F.3d 928, 933-34 (8th Cir. 2006).

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Mees*, 640 F.3d 849, 856 (8th Cir. 2011). An abuse of discretion occurs "where the sentencing court 'fails to consider

---

[2]Johnson also argues that, if Shaw was not a participant within the meaning of U.S.S.G. § 3B1.1, the enhancement could not be justified by Johnson's processing of Domecillo's and Skarl's loan applications because there was no evidence that Johnson "directed" either of those participants in how to obtain the loans. In light of our conclusion that Johnson's direction of Shaw was sufficient to justify the enhancement, we do not reach this question.

a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors.'" *United States v. Moore*, 565 F.3d 435, 438 (8th Cir. 2009) (quoting *United States v. Kowal*, 527 F.3d 741, 749 (8th Cir. 2008)). "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

"[I]t is not an abuse of discretion for a district court to impose a sentence that results in a disparity between co-defendants when there are 'legitimate distinctions' between the co-defendants." *United States v. Davis-Bey*, 605 F.3d 479, 483 (8th Cir. 2010) (quoting *United States v. Watson*, 480 F.3d 1175, 1178 (8th Cir. 2007)). In addition to the distinction that Johnson, unlike Domecillo and Beadle, did not receive a sentencing reduction for substantial assistance, *see United States v. Gallegos*, 480 F.3d 856, 859 (8th Cir. 2007) (per curiam), the district court also identified a legitimate distinction when it noted that Johnson's sentence was sufficient, but not greater than necessary, to force Johnson to "come to terms with what [he] did here, and come to terms with . . . the mere fact [that] what others may have encouraged or permitted does not relieve [him] of [his] responsibility for [his] own actions." The district court already had considered and rejected Johnson's argument that he was minimally culpable. When Johnson claimed that he was "not a criminal" or a "felon" and "followed every guideline of every lender," the court responded:

> [Y]ou seem to think that everybody is to blame here except you, and that your only offense here was not reporting Mr. Beadle. . . . I don't believe the facts support that, and find that you were an active participant in this fraud . . . and that you did so knowingly. And the fact that you continue to disallow your role in these offenses further confirms my assessment that a sentence in the Guideline range is appropriate in this matter.

-6-

The district court properly considered Johnson's "minimal remorse" in balancing the 18 U.S.C. § 3553(a) factors and crafting Johnson's sentence. *See United States v. Wilder*, 597 F.3d 936, 947 (8th Cir. 2010). Moreover, the district court specifically considered Johnson's role in the criminal enterprise and determined that a 33-month sentence was appropriate to "achieve parity with the [sentences] of similarly situated individuals, who have committed similarly situated offenses." Finally, the district court also was aware that, in addition to Johnson's continued refusal to appreciate the seriousness of his crimes, Johnson differed from Beadle and Domecillo in that he waited until after his trial had convened to plead guilty. Because of these legitimate distinctions, the district court did not abuse its discretion in sentencing Johnson to 33 months' imprisonment.

For the foregoing reasons, the judgment of the district court is affirmed.

_____