# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3788

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Garcia

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 18, 2012
Filed: January 16, 2013

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted Robert Garcia of conspiracy to distribute and possession with intent to distribute methamphetamine and Oxycodone in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846, and aiding and abetting possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A) and

18 U.S.C. § 2. The district court[1] sentenced Garcia to 240 months of imprisonment. Garcia appeals his sentence on the grounds the district court clearly erred in finding he was an organizer or leader of a criminal activity that involved five or more participants pursuant to United States Sentencing Guidelines Manual (U.S.S.G.) § 3B1.1(a) and possessed a firearm in connection with a drug offense pursuant to U.S.S.G. § 2D1.1(b)(1). We affirm.

I

The Bureau of Alcohol, Tobacco, and Firearms (ATF) began investigating Garcia's drug trafficking activities in 2007. Garcia lived in Garrison, Minnesota, where he ran an auto body shop called D.J.'s Auto. Garcia allowed Randy Lee Motzko, who later pleaded guilty and testified for the government, to live at D.J.'s Auto in exchange for running errands for Garcia's drug trafficking operation. Motzko testified Garcia directed him to drive to the Minneapolis-St. Paul area on at least four occasions to pick up a pound of methamphetamine from Epifanio Manzanares and transport the methamphetamine back to Garrison.

On June 24, 2010, Garcia provided Motzko a pickup truck and instructed him to meet Manzanares in the Twin Cities to pick up methamphetamine. Authorities learned of the meeting. Crow Wing County Deputy Patrick Pickar pulled over Motzko's truck as Motzko returned from the transaction. After Pickar learned the truck was uninsured, he impounded the vehicle. Officers later searched the truck and discovered the methamphetamine inside a box of Tide laundry detergent. The officers replaced the Tide box with a similar box to try to further the investigation and identify additional co-conspirators. Their plan worked. John Hildreth retrieved the truck from the impound lot. Officers followed him as he drove the truck to a boat

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

launch on Mille Lacs Lake. Garcia and Shawn Fultz arrived on a pontoon boat. Officers watched while the three men searched for the methamphetamine located inside the box of detergent.

Thomas Cisar and Emily Blahnik also testified for the government. Cisar did odd jobs at D.J.'s Auto and received methamphetamine as compensation for his work. Blahnik was the girlfriend of Karl Pentz, who was indicted with Garcia and pleaded guilty to conspiracy and firearm charges. Blahnik took over Pentz's drug dealing operation after Pentz was arrested. Blahnik testified she received an ounce of methamphetamine from Garcia for resale at least four times before Blahnik was arrested on July 30, 2008 for selling one half-ounce of methamphetamine.

Finally, the government presented the testimony of two confidential informants, Anthony Kemper and Renee Kelm. Kemper made nine controlled methamphetamine buys from Garcia between the summer of 2009 and the fall of 2010. Kelm made five controlled methamphetamine buys from Pentz between February 2010 and May 2010.

The jury returned a guilty verdict. Before sentencing, the district court examined a presentence investigation report (PSR), which recommended increasing Garcia's offense level by two for possession of a dangerous weapon in connection with a drug crime pursuant to U.S.S.G. § 2D1.1(b)(1) and by an additional four levels for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive pursuant to U.S.S.G. § 3B1.1(a). Garcia objected to the recommended enhancements.

The district court held an evidentiary hearing regarding the disputed sentencing issues on December 13, 2011. ATF Agent Jayme Syverson, who had been with the investigation since it began, testified at the hearing. He stated the majority of Garcia's drug sales took place in Garcia's home or business. Garcia's role was to coordinate

all aspects of these transactions. Syverson recounted one particular transaction on May 20, 2010, in which police officers followed Pentz from his residence to Garcia's home on Mille Lacs Lake. Pentz picked up methamphetamine at Garcia's home and thereafter drove to a McDonald's parking lot, where Pentz sold methamphetamine to Kelm. Syverson also detailed the October 14, 2010 execution of a search warrant at Garcia's home. Inside Garcia's bedroom, agents found a small amount of psilocybin mushrooms and marijuana, four Ecstasy tablets, a rifle magazine loaded with eight .22 caliber rounds, and ten loose .270 caliber rounds. Inside Garcia's laundry room, agents found five guns: three 12-gauge shotguns and two rifles. Agents found additional ammunition in a downstairs bedroom and an outside shed.

After considering the testimony at the sentencing hearing and the evidence at trial, the district court overruled Garcia's objections to the PSR and imposed the two enhancements. The court calculated Garcia's Guidelines range at 360 months to life, but varied downward and sentenced Garcia to 240 months of imprisonment. Garcia then filed this appeal.

II

Garcia asks us to reverse the district court's sentence and remand for resentencing for two reasons: (1) the district court erred in applying the four-level leadership enhancement; and (2) the district court improperly applied the two-level dangerous weapon enhancement.

We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. United States v. Anderson, 618 F.3d 873, 879 (8th Cir. 2010). Because the number of members of a conspiracy and a defendant's possession of a gun within the meaning of U.S.S.G. § 2D1.1(b)(1) are matters of fact, this court reviews the district court's conclusions for clear error. United States v. Razo-Guerra, 534 F.3d 970, 976 (8th Cir. 2008) (leadership enhancement); United

States v. Perez-Guerrero, 334 F.3d 778, 783 (8th Cir. 2003) (dangerous weapon enhancement).

A. Leadership Enhancement

Section 3B1.1(a) mandates a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." A "participant" is "a person who was criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1. "The government bears the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted." United States v. Gaines, 639 F.3d 423, 427 (8th Cir. 2011).

Garcia does not dispute he was a leader or organizer. Instead, he argues the criminal conspiracy he led did not have five or more participants. Garcia concedes he, cooperating co-defendant Motzko, and co-defendant Pentz were participants. Appellant's Br. 21. He claims, however, the district court clearly erred when it found co-defendant Manzanares participated in the conspiracy because the government did not present evidence of Manzanares's participation in its memorandum detailing the government's sentencing position. We disagree. Manzanares pleaded guilty to participating in the conspiracy Garcia led. Moreover, Agent Syverson's testimony at the sentencing hearing regarding the June 24, 2010 transaction between Motzko and Manzanares was sufficient to establish Manzanares was a participant. Motzko's trial testimony about the multiple drug transactions he conducted with Manzanares provided further evidence. A sentencing court may rely on evidence introduced at trial when making Guidelines determinations. United States v. Bledsoe, 445 F.3d 1069, 1073 (8th Cir. 2006) ("Having presided over the trial, the district court was entitled to rely on this evidence at sentencing . . . ."). The government has adduced more than sufficient evidence to prove Manzanares was a participant in the conspiracy Garcia led.

Garcia also contends the district court clearly erred with respect to the other participants because (1) Blahnik and Cisar had only a transient, buyer-seller relationship with Garcia; and (2) the evidence regarding the remaining participants is vague and inconclusive. Again, we disagree. We have acknowledged "the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction." United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981) (quotation and citation omitted). A buyer-seller relationship, however, involves "a single transient sales agreement and small amounts of drugs consistent with personal use." Id. (quotation and citation omitted); see also United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011), cert. denied, 132 S. Ct. 1583 (2012). Here, after Pentz was arrested, Blahnik obtained an ounce of methamphetamine from Garcia for resale at least four times. Blahnik was arrested on July 30, 2008 for selling one half-ounce of methamphetamine Garcia had provided her. The evidence, in short, established an ongoing relationship in which Garcia was Blahnik's supplier.[2] We therefore have little difficulty concluding Blahnik participated in the conspiracy Garcia led.

Because we conclude Manzanares and Blahnik were participants and Garcia has conceded he, Motzko, and Pentz participated, the conspiracy had five or more participants. We need not address Garcia's arguments with respect to the other participants. The district court did not clearly err when it imposed the enhancement.

B. Dangerous Weapon Enhancement

Section 2D1.1(b)(1) provides, "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." For § 2D1.1(b)(1) to apply, the government

---

[2]The fact Blahnik was not indicted for this conduct makes no difference. See United States v. Mendoza, 341 F.3d 687, 693 (8th Cir. 2003) (concluding persons who are not indicted still may be "participants" for purposes of U.S.S.G. § 3B1.1).

must prove (1) the weapon was possessed; and (2) it was not clearly improbable that the weapon was connected to the drug offense.[3] Anderson, 618 F.3d at 880. "The government can prove that the weapon was connected with the offense by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." United States v. Payne, 81 F.3d 759, 763 (8th Cir. 1996) (quotation and citation omitted). Although the mere presence of a weapon is not enough, United States v. Savage, 414 F.3d 964, 966 (8th Cir. 2005), the government need not show the defendant used or even touched a weapon to find a connection. United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam). The enhancement poses "a very low bar for the government to hurdle." Anderson, 618 F.3d at 882.

Garcia does not dispute he possessed the weapons. Rather, he argues it was "clearly improbable" the weapons ATF agents found were connected to the methamphetamine conspiracy he led. Appellant's Br. 27. The district court found that on at least one occasion, Garcia dealt drugs to Pentz at Garcia's residence. Statement of Reasons 10. Garcia contends the government did not prove by a preponderance of the evidence this transaction took place in Garcia's house, as opposed to some other location on his property. Therefore, Garcia argues, the district court erred when it found a spatial nexus between the guns, the methamphetamine conspiracy, and him. Garcia also claims there was no temporal nexus. The indictment stated the conspiracy ended on or about September 29, 2010. The alleged

---

[3]Until relatively recently, there was some intra-circuit inconsistency regarding this requirement. Some courts employed the "not clearly improbable" formulation described above, while others required the government to show it was "at least probable that the weapon was connected to the offense." United States v. Hays, 15 F.3d 125, 127 (8th Cir. 1994). Judge Arnold resolved this inconsistency in plenary fashion in United States v. Peroceski, 520 F.3d 886 (8th Cir. 2008). It is now settled the government must show it is "not clearly improbable" the weapon was connected to the drug offense for the enhancement to apply.

drug deal between Garcia and Pentz occurred on May 20, 2010. According to Garcia, these events are too remote from the October 14, 2010 seizure of the guns to constitute a temporal nexus. Because these connections are lacking, Garcia argues the government did not prove a required element of the enhancement.

Garcia's arguments are without merit. We have held the government demonstrates the required connection between the weapon and the drug activity when the weapon "was found in the same location where drugs or drug paraphernalia were located or where part of the conspiracy took place." United States v. Young, 689 F.3d 941, 946 (8th Cir. 2012) (quotation and citation omitted). The guns were found inside Garcia's laundry room. Part of the conspiracy unquestionably took place in Garcia's home. ATF Agent Syverson testified many of Garcia's drug sales took place inside his home. See United States v. Martinez, 557 F.3d 597, 600 (8th Cir. 2009) (concluding witness testimony may provide a sufficient basis for a district court to apply the § 2D1.1(b)(1) enhancement). Garcia offers no evidence the May 20, 2010 drug sale between him and Pentz took place elsewhere. Even if the transaction did take place elsewhere on the property, we have not required both the weapon and drug activity to be located within the home to find the two are connected. United States v. Betz, 82 F.3d 205, 211 (8th Cir. 1996) (holding the district court did not clearly err in applying the enhancement where guns were found on the same premises from which the defendant trafficked drugs and were "readily accessible" to the defendant). Indeed, we have found a nexus where the connection between the guns and the drugs is more remote than in Garcia's case. See Peroceski, 520 F.3d at 889-90 (concluding the district court did not err in applying the enhancement where the drugs were found inside a locked safe in the defendant's girlfriend's garage and guns were found inside a camper-trailer on the property where the defendant sometimes lived).

Moreover, although Garcia correctly notes the guns were not seized until after the termination of the conspiracy, we do not indulge the far-fetched conclusion Garcia acquired five guns in the two-week period between the end of the conspiracy

and the execution of the search warrant. Garcia ran a drug operation for many years. Given the long-standing duration of Garcia's conduct, the district court did not clearly err in finding Garcia possessed the guns while the conspiracy took place. Because the guns were found inside Garcia's home and part of the conspiracy took place in that same location, it is not clearly improbable the weapons were connected to Garcia's drug trafficking activity. The district court properly applied the enhancement.

## III

The judgment of the district court is affirmed.

_____