# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1574

_____

United States of America

*Plaintiff - Appellee*

v.

John Starks, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: February 29, 2016
Filed: March 8, 2016

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

John Starks, Sr., pleaded guilty to conspiracy to manufacture methamphetamine near a school, in violation of 21 U.S.C. §§ 846, 860(a). At sentencing, the district court[1] imposed a three-level role enhancement pursuant to § 3B1.1(b) of the

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Sentencing Guidelines because Starks was a manager or supervisor of criminal activity that involved at least five participants. The court sentenced Starks to 192 months' imprisonment. Starks now appeals his sentence. We affirm.

John Starks, Sr., ("Starks") resided with his wife, Patricia Starks, in an apartment located across the street from an elementary school. On February 19, 2014, Starks and Casey Duhme attempted to manufacture methamphetamine in the bathroom of the Starks' apartment. Duhme provided two boxes of pseudoephedrine, one of which came from Elly Kohl, the mother of his child. Starks provided lye and pseudoephedrine that he had acquired from his son, John Starks, Jr., and from Tyler Cue, his son's friend who suffers from autism. Although Patricia Starks remained in the apartment while Starks and Duhme attempted to manufacture drugs, she did not take part in the attempt to make methamphetamine that evening.

At some point during the drug-manufacturing process, a fire broke out inside the Starks' apartment. The fire burned Starks's hands and singed Duhme's hair. Starks, Duhme, and Patricia Starks fled in Starks's car. An officer conducting a routine patrol of the area noticed smoke coming from the Starks' apartment and evacuated the building's residents. Shortly afterward, the building's roof collapsed. One tenant went to the hospital for smoke inhalation. During a later search of the Starks' apartment, police found a mason jar containing camping fuel and methamphetamine beside Starks's bed.

As a result of these events, Starks pleaded guilty to one count of conspiracy to manufacture methamphetamine near a school, in violation of 21 U.S.C. §§ 846, 860(a). Starks's final presentence investigation report recommended a three-level role enhancement pursuant to USSG § 3B1.1(b) because Starks had a supervisory role in criminal activity that included at least five participants. The list of participants in the presentence investigation report included Tyler Cue. Starks objected to the enhancement and to the inclusion of Cue. In light of Cue's autism,

Starks contended that "there ha[d] been no showing that [Cue] was aware of the criminal object of the conspiracy and knowingly offered his assistance." The Government agreed that Cue might not qualify as a participant because of his autism but nonetheless contended that the three-level role enhancement applied. In its sentencing memorandum, the Government identified the five participants as Starks, Starks, Jr., Patricia Starks, Duhme, and Kohl. Starkes argued at his sentencing hearing that Kohl did not participate in the criminal activity and therefore was not part of the conspiracy. Starks raised no challenge to any other named participant.

At Starks's sentencing hearing, Duhme testified about Kohl's role in the methamphetamine-manufacturing scheme. Duhme explained that Kohl supplied him with pseudoephedrine and that Kohl "knew what to get" because she previously had distributed methamphetamine. Duhme also testified that Kohl assisted him in cutting off his singed hair after the fire in order to conceal from police his involvement in the drug-manufacturing activity. After considering this testimony, the court determined that five individuals—Starks, Starks, Jr., Patricia Starkes, Duhme, and Kohl—had participated in the criminal activity. The court thus applied the three-level role enhancement when calculating Starks's advisory sentencing guidelines range of 135 to 168 months. The court granted the Government's motion for upward variance and ultimately imposed a sentence of 192 months' imprisonment.

On appeal, Starks contends that the district court committed a procedural error by applying the role enhancement under USSG § 3B1.1(b). He does not challenge the district court's finding that he acted as a manager or supervisor. Instead, he argues only that the court incorrectly determined that the criminal activity included at least five participants. To support this argument, Starks renews his contention that Kohl was not a participant. In addition, he now contends that Patricia Starks was not a participant. We review for clear error the district court's finding regarding the number of participants involved in criminal activity under USSG § 3B1.1. *United States v. Matlock*, 109 F.3d 1313, 1317 (8th Cir. 1997). The determination must be

supported by a preponderance of the evidence. *United States v. Vasquez-Rubio*, 296 F.3d 726, 729 (8th Cir. 2002). We disturb the court's finding only if "the decision is unsupported by substantial evidence, [the decision] is based on an erroneous view of the applicable law, or [if] in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Walker*, 688 F.3d 416, 421 (8th Cir. 2012) (quoting *United States v. Miller*, 511 F.3d 821, 823 (8th Cir. 2008)).

We begin by addressing Starks's argument that the court clearly erred by including Kohl as a participant. Starks contends that Kohl was not a participant because the Government failed to prove that Kohl knew of the conspiracy and intentionally joined it. This argument misses the mark because it relies on an improper test for participant status.

A "participant" under USSG § 3B1.1 is "a person who is criminally responsible for the commission of the offense." USSG § 3B1.1, cmt. n.1. The term "offense" encompasses not only the elements and acts cited in the count of conviction, but also all relevant conduct constituting the "contours of the underlying scheme itself." *United States v. Rosnow*, 9 F.3d 728, 730 (8th Cir. 1993) (quoting *United States v. Caballero*, 936 F.2d 1292, 1298-99 (D.C. Cir. 1991)). Such relevant conduct includes all acts and omissions designed to further the jointly undertaken criminal activity, regardless of whether those acts occurred during commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility. USSG § 3B1.1, intro. cmt. (defining "offense" to include the list of activities set forth in USSG § 1B1.3(a)). An individual does not need to be guilty as a principal in the charged offense in order to be "criminally responsible" for that offense. *United States v. Hall*, 101 F.3d 1174, 1178 (7th Cir. 1996). Instead, the individual only needs to give "knowing aid in some part of the criminal enterprise." *Id.* (citing *United States v. Braun*, 60 F.3d 451, 453 (8th Cir. 1995)). In addition, an individual need not be indicted or tried in order to be a participant under § 3B1.1.

-4-

*United States v. Brockman*, 183 F.3d 891, 899 (8th Cir. 1999).  Finally, individuals may be participants even if they do not benefit from commission of the offense. *Braun*, 60 F.3d at 453.

Here, the evidence supports the district court's conclusion that Kohl was criminally responsible because she knowingly aided Starks and Duhme's criminal enterprise.  Duhme testified that Kohl supplied him with boxes of pseudoephedrine on two occasions and that one of these boxes was used to manufacture drugs on the night of the fire.  This supplier relationship supported the court's finding that Kohl qualified as a participant. *See United States v. Garcia*, 703 F.3d 471, 475-76 (8th Cir. 2013) (noting that an ongoing supplier relationship may establish status as a participant under § 3B1.1).  Circumstantial evidence showed that Kohl understood that her purchases would be used to manufacture methamphetamine.  Duhme testified that Kohl had a history of dealing methamphetamine and that she knew what to purchase for Duhme as a result of her "past."  This testimony belies any claims of ignorance as to the purpose of her purchases. *See United States v. Davidson*, 195 F.3d 402, 408 (8th Cir. 1999) (noting that prior possession of methamphetamine is relevant to prove knowledge in conspiracy cases); *see also United States v. Brown*, 461 F.3d 1062, 1069 (8th Cir. 2006) (noting that pseudoephedrine has limited legal uses and that, absent a cold, headache, or sinus problems, "there are remarkably few things you can do with pseudoephedrine except make illegal narcotics" (quoting *United States v. Bewig*, 354 F.3d 731, 736 (8th Cir. 2003))).  Finally, Duhme testified that Kohl helped him cut his singed hair in an attempt to conceal from police his involvement in the methamphetamine-manufacturing attempt.  This act, which was calculated to help Duhme avoid detection, is an example of relevant conduct that qualifies an individual as a participant under § 3B1.1. *See* USSG § 1B1.3(a)(1) (explaining that acts calculated to avoid detection are relevant conduct in which participants under § 3B1.1 may engage).  In light of this testimony, we see no clear error in the district court's determination that Kohl was a participant who knowingly provided aid to the criminal enterprise.

Starks also argues that his wife, Patricia, was not a participant under USSG § 3B1.1 but merely an unwitting third party used to commit the offense. *See United States v. Mentzos*, 462 F.3d 830, 842 (8th Cir. 2006) (explaining that an individual who is unwittingly involved in a conspiracy does not qualify as a participant under § 3B1.1). Although Starks objected to the role enhancement at the time of sentencing, he did not raise the issue of whether Patricia qualified as a participant. Thus, we review the issue only for plain error. *See United States v. Johnson*, 688 F.3d 444, 447 (8th Cir. 2012). For us to find plain error, Starks would have "to show that (1) there was an error that was not affirmatively waived, (2) the error was plain, meaning clear and obvious, (3) the error affects his substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Ali*, 616 F.3d 745, 752 (8th Cir. 2010)).

We reject Starks's argument that it was clear and obvious at the time of sentencing that Patricia was not a "participant" within the meaning of USSG § 3B1.1. According to the presentence investigation report, Patricia purchased pseudoephedrine pills for her husband on two prior occasions. Starks did not object to this statement, nor did he object to the inclusion of these pills in the drug quantity for which he was responsible. *See United States v. Hunter*, 505 F.3d 829, 831 (8th Cir. 2007) (noting that the district court may accept facts set forth in a presentence investigation report as true when the defendant has not objected to them). Patricia's act of supplying psuedoephedrine supports the court's decision to count her as a participant. *See Garcia*, 703 F.3d at 475-76. Starks also acknowledged that his wife had been a methamphetamine user, and the evidence showed that Patricia allowed her husband to manufacture methamphetamine inside their shared apartment. This conduct likewise is consistent with participant status. *See United States v. Capps*, 952 F.2d 1026, 1028 (8th Cir. 1991) (finding that an individual was a participant in a drug-dealing operation in part because he was present in the same home when the defendant committed the criminal activity); *cf. United States v. Kocher*, 948 F.2d 483, 485 (8th Cir. 1991) (holding that an individual was part of a conspiracy to

manufacture when he provided a location in which drugs were manufactured). Furthermore, the presence of a mason jar containing methamphetamine and camping fuel in Starks's bedroom suggests that Starks had manufactured drugs in the apartment on at least one other occasion. Finally, Patricia fled with Starks and Duhme after the attempt to manufacture methamphetamine went awry, and she did not alert authorities about the fire. Such acts and omissions aimed at avoiding responsibility are examples of conduct supporting the determination that an individual was a participant under § 3B1.1. *See* USSG § 1B1.3(a)(1). In the face of such evidence, Starks has not met his burden to show that it was clear and obvious that Patricia was merely an unwitting third party rather than a participant. We thus see no plain error in the court's finding that Patricia was a participant within the meaning of § 3B1.1.

Based on this evidence, we find no clear or plain error in the district court's conclusion that Kohl and Patricia Starks were participants in the criminal activity. Accordingly, we affirm the imposition of the three-level role enhancement.[2]

------------------------------

[2]Starks raised no challenge to the substantive reasonableness of his sentence.

-7-