# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1668

———————————————

United States of America

*Plaintiff - Appellee*

v.

Brandon Jermaine Sykes

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the Southern District of Iowa - Davenport

—————————

Submitted: January 12, 2017
Filed: April 14, 2017

—————————

Before WOLLMAN, MURPHY, and MELLOY, Circuit Judges.

—————————

MELLOY, Circuit Judge.

Brandon Sykes pleaded guilty to one count of conspiracy to distribute a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. After calculating a Guidelines range of 360 months

to life, the district court[1] sentenced Sykes to 360 months in prison. On appeal, Sykes argues the district court improperly calculated the drug quantity determining his base offense level. He also argues the district court erred in applying three sentencing enhancements. We affirm.

## I.

The written plea agreement describes Sykes's offense as follows. Around April 2013, Sykes entered into an agreement with individuals living in Chicago and Moline, Illinois, and Davenport, Iowa, to distribute cocaine base. Sykes and his girlfriend, Shataria Beason, would "receive cocaine from a source in Chicago." Beason would drive to Chicago to pick up the cocaine and then supply Sykes with cocaine base, which he sold. Sykes also "received two (2) ounces of powder cocaine from another source in Chicago and then converts [sic] it into four (4) ounces of [cocaine base]."

In March 2015, law enforcement used a confidential source to conduct four controlled buys of cocaine base from Sykes at his Davenport residence. On April 1, 2015, law enforcement executed search warrants at both Sykes's and Beason's residences. At Sykes's residence, law enforcement seized packaging materials; $748 in cash; a nylon gun case; and two items, a measuring cup and razor blade, with cocaine residue. At Beason's residence in Moline, law enforcement seized 28 grams of cocaine base; $6,000 in cash; a .380 caliber pistol; and a .45 caliber pistol.

Sykes was later arrested, pleaded guilty to one count of conspiracy to distribute a substance or mixture containing cocaine base, and stipulated to the above facts. At sentencing, the district court found that the drug-quantity evidence, including

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

additional officer testimony at the sentencing hearing, supported a base offense level of 34. See U.S.S.G. § 2D1.1(c)(3) (fixing a base offense level of 34 to offenses involving more than 2,800 grams but less than 8,400 grams of cocaine base). The district court also applied several sentencing enhancements. These included enhancements for managing or supervising criminal activity involving five or more participants, id. § 3B1.1(b); using violence or making a credible threat to use violence, id. § 2D1.1(b)(2); and maintaining a premises for the purpose of manufacturing or distributing a controlled substance, id. § 2D1.1(b)(12). After applying other enhancements and adjustments, the district court found a total offense level of 40 and a criminal history category of VI. This resulted in a Guidelines range of 360 months to life in prison. Both the government and Sykes requested a sentence at the bottom of the Guidelines range, and Sykes was sentenced to 360 months in prison.

## II.

We review the district court's "factual findings for clear error and its interpretation of the Guidelines de novo." United States v. Vickers, 528 F.3d 1116, 1120 (8th Cir. 2008). On appeal, Sykes argues the district court erred in finding the drug-quantity evidence supported a base offense level of 34. Instead, Sykes argues the drug-quantity evidence only supports a base offense level of 32. He also argues the district court erred in applying three sentencing enhancements. For the following reasons, we conclude the district court properly applied the sentencing enhancements. We further conclude that we need not reach the question of whether the district court erred in applying a base offense level of 34, rather than a base offense level of 32.

## A.

A defendant is subject to a three-level role enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity

involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). On appeal, Sykes argues he was not a manager or supervisor in the conspiracy to distribute cocaine base. Testimony at the sentencing hearing, however, established that Sykes "would bring the powder cocaine to Davenport where he had a 60-year-old female . . . cook the powder cocaine into crack cocaine." Additionally, the presentence investigation report ("PSR") stated that Sykes did not store drugs at his residence at night because he worried law enforcement would perform a raid during that time; rather, Sykes "had Beason bring the drugs to his house every morning and he sold it all day. Each night, Beason picked up the drugs and took them back to her house so Sykes would not get caught with it at his residence." Sykes did not object to these facts in the PSR, and the district court therefore was entitled to rely upon them. See United States v. Bledsoe, 445 F.3d 1069, 1073 (8th Cir. 2006). These facts were sufficient to support the district court's finding that Sykes was a manager or supervisor under § 3B1.1(b). See United States v. Gaines, 639 F.3d 423, 428–29 & n.4 (8th Cir. 2011) (stating that the terms "manager" and "supervisor" are broadly construed under the Guidelines and that control over another participant is sufficient, but not necessary, for the enhancement); United States v. Cole, 657 F.3d 685, 687–88 (8th Cir. 2011) (per curiam) (upholding the enhancement where the defendant directed a participant to transport drugs).

As to the district court's finding that five or more participants were involved, Sykes contends only that his two cocaine suppliers in Chicago were not participants under the Guidelines. An ongoing supplier relationship, however, is sufficient to support a finding that the supplier was a participant under § 3B1.1. United States v. Starks, 815 F.3d 438, 441 (8th Cir. 2016); United States v. Garcia, 703 F.3d 471, 475–76 (8th Cir. 2013). Further, in the plea agreement's stipulation of facts, Sykes admitted to agreeing to distribute cocaine base with "individuals" living in Chicago, Moline, and Davenport. Although the plea agreement does not specify whether these "individuals" include the Chicago suppliers, the record strongly suggests, and the district court could have reasonably inferred, that the two Chicago suppliers were the

Chicago parties to the agreement. We therefore conclude the district court did not err in applying the three-level role enhancement.

B.

A defendant is subject to a two-level enhancement "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." U.S.S.G. § 2D1.1(b)(2). At the sentencing hearing, Detective Brandon Koepke testified as to three threatening or violent incidents that the confidential source ("CS") reported to him.

First, the CS reported that, at a meeting with Sykes at an automotive shop, Sykes said he was going to find and shoot an individual who allegedly stole cocaine base from one of Sykes's customers. When Sykes made this threat, the CS reported, Sykes had a .45 caliber pistol with a black handle and gray slide, and an unnamed passenger in Sykes's vehicle had an all-chrome .380 caliber pistol. Second, the day after officers executed the search warrants, a "frantic" and "obviously excited" CS reported that Sykes threatened the CS with a firearm. The CS said he met with Sykes at a barbershop and, there, Sykes accused the CS of stealing cocaine base and cash. The CS reported that Sykes told the CS he had "some hours" to return the items before Sykes began killing the CS's family members and that Sykes then lifted up the front of his shirt, revealing a black pistol. And, third, the CS reported an altercation with Sykes shortly after the barbershop incident. Specifically, the CS said Sykes pulled out into an intersection to stop the CS's vehicle from moving; the CS exited his vehicle; and Sykes and the CS got into a fistfight in the middle of the street.

On appeal, Sykes argues the CS's reports to Detective Koepke are incredible, uncorroborated, and illogical. Sykes notes that Detective Koepke testified the CS was the only witness to Sykes's threats and the altercation in the street. Sykes also notes that Detective Koepke testified officers were not using the CS for any active

investigations because they received reports the CS was selling cocaine base. This, according to Sykes, is evidence of the CS's motive to eliminate Sykes as a competitor. Finally, Sykes argues the CS's report that Sykes threatened him with a firearm at the barbershop is illogical. Specifically, Sykes argues that he could not have had a firearm that day because his firearms had already been seized during execution of the search warrants.

We find no error in the district court's application of the enhancement for "us[ing] violence" or "mak[ing] a credible threat to use violence." U.S.S.G. § 2D1.1(b)(2). Detective Koepke testified that officers had not been able to corroborate allegations the CS was selling cocaine base. According to Detective Koepke, officers decided, as a precautionary matter, that it would be best not to use the CS as an informant again until they could verify or discredit the allegations against the CS. Further, there were "sufficient indicia of reliability" to support the CS's reports. See United States v. Agboola, 417 F.3d 860, 865 (8th Cir. 2005) ("When resolving a disputed sentencing factor, the court may consider relevant information without regard to its admissibility under evidentiary rules, and hearsay testimony is admissible, so long as sufficient indicia of reliability exist." (citations omitted)). For example, Detective Koepke testified that the CS's descriptions of the firearms at the automotive shop matched "to a T" the firearms seized during execution of the search warrants. Detective Koepke also testified that the CS had worked with other officers in the past and that there was no reason to believe the CS has ever lied to law enforcement. Additionally, Detective Koepke stated that, in a post-Miranda-warning interview, Sykes admitted he was at the barbershop on the day of the threat. According to Detective Koepke, Sykes admitted to asking a known crack dealer at the barbershop whether he could borrow the dealer's revolver for a robbery. The dealer agreed, and Sykes planned on visiting the dealer's residence that day to obtain the firearm. Thus, at the very least, Sykes admitted to having access to a firearm on the day of threat. Accordingly, we find no error in the application of the enhancement.

-6-

## C.

A defendant is subject to a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). This enhancement "applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also her family home at the times in question." United States v. Miller, 698 F.3d 699, 707 (8th Cir. 2012). Here, the facts stated above support a finding that Sykes used his residence for substantial drug-trafficking activities. We therefore find no error in the district court's application of drug-premises enhancement.

## D.

Finally, Sykes argues the district court erred in calculating the drug quantity determining his base offense level. He argues that, properly calculated, the drug-quantity evidence supports only a base offense level of 32, rather than the base offense level of 34 found by the district court. See U.S.S.G. § 2D1.1(c).

We need not consider Sykes's arguments. Even if the district court erred in calculating the drug quantity and a base offense level of 32 applied, such error would be harmless. With a base offense level of 32, in addition to the enhancements and adjustments applied by the district court, Sykes's total offense level would only decrease from 40 to 38. Therefore, considering Sykes's criminal history category of VI, the applicable Guidelines range of 360 months to life would not change. Both Sykes and the government, moreover, requested a sentence at the bottom of this range, and the district court granted those requests. In other words, even if we accepted the entirety of Sykes's arguments regarding the drug-quantity calculation and concluded that the district court erred, such error did not substantially influence sentencing because the district court nevertheless arrived at the proper Guidelines range. See United States v. Dace, 842 F.3d 1067, 1069 (8th Cir. 2016) (per curiam)

("A failure to properly calculate the advisory Guidelines range is a significant procedural error." (quoting <u>United States v. Spikes</u>, 543 F.3d 1021, 1023 (8th Cir. 2008))); <u>United States v. Gray</u>, 622 F. App'x 601, 603 (8th Cir. 2015) (per curiam) ("Because [the defendant's] sentencing Guidelines calculations were the same . . . , any error in applying this Guideline was harmless.").

## III.

For the foregoing reasons, we affirm.

_____